STATE of Missouri, Respondent,

v.

Edward T. NIMROD, Appellant.

No. 56751.

Supreme Court of Missouri,
Division No. 2.

Sept. 25, 1972.

John C. Danforth, Atty. Gen., Stephen D. Hoyne, Asst. Atty. Gen., Jefferson City, for respondent.

John J. Cosgrove, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

DAVID J. DIXON, Special Judge.

The defendant, Edward T. Nimrod, was found guilty of robbery in the first degree and sentenced to twelve (12) years in the State Penitentiary by a jury. The trial court denied a motion for a new trial, but reduced the sentence to seven (7) years. The defendant asserts error on the sole ground that the trial court improperly refused an instruction limiting to impeachment only certain testimony *offered by the defendant*. The judgment of conviction is affirmed.

The case as presented by the state's witnesses may be summarized as follows: The Blue Valley Market at 43rd and Cleveland was robbed by two men armed with a sawed-off shotgun. The robbers, on entering, accosted the manager, Conforti, and one of them held the shotgun at his head and herded him into the rear storeroom. While this was being done, the accomplice rifled the cash register. The robber with the gun then threatened Conforti and demanded the location of the rest of the money. The man with the gun then gave it to his accomplice and the original gunman obtained more money from a box located under the counter. Conforti was placed in the storeroom and the door

closed. He heard a shotgun blast and then one Watson, a customer, kicked the door to the storeroom open and released him. Watson testified that he entered the store while the robbery was in progress, saw the robbers place Conforti in the storeroom and saw the weapon exchanged. He also observed that as the robbers fled, the one who then had the shotgun tripped over a box and the weapon discharged.

When the police arrived they found blood and pieces of cloth embedded in the suspended ceiling, the cloth being blue in color. Within a few minutes another policeman apprehended the defendant in a stairwell within blocks of the store. The defendant had a makeshift tourniquet made from a blue shirt with white buttons, applied to a profusely bleeding wound in his shoulder. There was testimony that the blue shirt and the fragment of cloth from the ceiling were the same. These objects were in evidence and passed to the jury. Both Conforti and Watson unequivocally identified the defendant as one of the robbers. Watson and Conforti had described the defendant as wearing a blue shirt at the time of the robbery. Conforti and Watson both mentioned a peculiar gold band on the defendant's front teeth which aided the identification.

The single issue in this case is posed by the only evidence defendant offered. A lawyer on the staff of the public defender who had appeared for the defendant in the magistrate court was called as a witness. He denied any present recollection of the testimony but notes he took in what the witness described as "gibberish" and immediately transcribed by him to legible form were offered as his "past recollection recorded" of the witness Conforti's testimony at the preliminary hearing. The only objection by the state was that the notes were "incomplete". To the extent

necessary to understanding, the notes read as follows: " * * * Defendant and another man entered store, they went toward milk department, Conforti felt hand grab him and saw a shotgun, the other man had the shotgun, defendant emptied cash register, at this time Conforti got good look at defendant, Lee Watson walked in on the robbery, Conforti after money taken was forced into back room by defendant, Conforti heard blast, * * * ".

This was the only evidence in the case offered by the defendant. There was no alibi evidence in the record. The sole issue was the identification of defendant as one of the robbers which in this case did not depend entirely upon the identifying witnesses. This identification is corroborated by the physical evidence of the wounding of one of the robbers, the piece of shirt in the ceiling, and the wounded defendant's apprehension within the half hour bearing a wound consistent with the accidental discharge of the robbers' weapon and using as a tourniquet a blue shirt of the same material as the cloth found in the ceiling of the store.

The instruction offered by the defendant is as follows:

"Evidence that on some former occasion a witness other than defendant made a statement *consistent or inconsistent* with his testimony in this case may be considered by you in deciding the credibility of the witness and the weight to be given to his testimony. However, any prior statement of the witness must not be considered by you as evidence of the matters referred to in that statement, except as to such matters, if any, as you may find were admitted to be true by the witness in his testimony in this case." [1]

(Emphasis supplied.)

---

1. We take the instruction as shown in the brief since it is not in the transcript.

The instruction is in form that proposed in Missouri Pattern Jury Instructions Criminal Sec. 3.52 (1969 Draft). The report of the Committee, p. 12, designates this as an instruction required to be given if requested. The form of the instruction is not in issue in this case but the Committee's language classifying this may be too broad as indicated infra.

The defendant argues that this instruction is required when the state offers hearsay to impeach a witness citing State v. Carolla, 316 Mo. 213, 292 S.W. 721 (1926) and State v. Davenport, 342 Mo. 996, 119 S.W.2d 291 (1938) and that it follows such an instruction must be given at the request of the defendant when defendant offers such impeaching testimony.[2]

■ The force of defendant's argument is predicated upon a determination that the notes of Conforti's testimony given in the preliminary in fact contradicted his testimony at the trial. The cases which have considered the admissibility of hearsay for impeachment purposes give guidance as to what constitutes such impeachment. To impeach the hearsay must be inconsistent with the whole effect and impression of the witness' testimony. Isolated words or phrases contained in the testimony or an omission of detail supplied at trial will not suffice as a basis for the necessary contradiction. Cain v. Orscheln Bros. Truck Lines, Inc., 450 S.W.2d 474 (Mo.App. 1970). Hall v. Phillips Petroleum Company, 358 Mo. 313, 214 S.W.2d 438, 1. c. 442 (1948), Wigmore on Evidence, Vol. III, p. 725.

■ Viewing the testimony of Conforti in its entirety and for its general sense, it shows that the defendant entered the store, grasped Conforti by the neck and placed the shotgun against his head. The accomplice emptied the *cash register* and then as Conforti was placed in the back storeroom and threatened if he did not disclose the location of the last of the money, the defendant and his accomplice exchanged the gun and the defendant then emptied *the cash box from under the counter*. This view of Conforti's testimony is amply and completely corroborated by the testimony of the witness Watson, and when the evidence is viewed in this light, it is apparent that there is no contradiction between the so-called notes of Conforti's testimony and his testimony offered in the case. Conforti's trial testimony is that both of the bandits at one time or another were in possession of the gun. The meager statement of his testimony at the magistrate level can only contradict his testimony in chief on the assumption that the magistrate court testimony of Conforti was that the defendant did not have the gun *at any time*. Defendant argues that the testimony concerning the cash register determines the time when Conforti said the defendant had the gun. The difficulty is that the trial testimony of both Conforti and Watson was that the bandits obtained money from *two places*: 1) the cash register and, 2) the box under the counter and that both obtained cash and both handled the gun. The more detailed testimony at trial is an amplification of what is reported as Conforti's magistrate court testimony not a contradiction of his earlier testimony.

The anomaly of these facts presents then the crucial question to be determined. Is the instruction required when such evidence does not constitute impeachment and when it is requested by the party offering the evidence? Defendant asserts that the language of State v. Davenport, supra, and State v. Carolla, supra, taken at face value would require the instruction be given even under the circumstances of this case.[3]

The defendant refers us to the language of Davenport, supra, 119 S.W.2d 1. c. 291:

"Under these circumstances, we think this instruction or one of similar import should have been given. The jury

2. This argument is supported by the broad statement of the Committee in the classification of this instruction as one that "must be given if requested". Report of Committee, p. 12.

3. The Committee comment would also require the instruction if literally applied.

This because the instruction applies equally to the "consistent or inconsistent" statements and the comment does not differentiate the case as here where the prior statement does not impeach.

should have been told explicitly, by a proper instruction, that impeaching evidence could not be considered by them as substantive evidence tending to show appellant guilty of any crime . . . We think the failure to give this instruction was prejudicial error."

They further cite Carolla, supra, 292 S. W. 1. c. 726-727:

"The jury would clearly understand by this instruction that statements in the exhibits were not to be considered as evidence or proof of matters or facts therein stated, except such facts, if any, as they might find were sworn to be true by the witness in his testimony. There was no error in giving the instruction."

The underlying rule which required the giving of the instructions in both the cited cases was the evidentiary rule excluding hearsay as evidence of the matters in issue.

■    Examination of the reasons for the general rule applied to the exceptional facts not present when the rule is laid down will usually formulate the exception. Such is the case here. The authority in Missouri is clear that extra judicial statements of the witness are not admissible and constitute a form of hearsay. State v. Kinne, 372 S.W.2d 62 (Mo.Sup.1963). Their admission in evidence will constitute reversible error unless as a matter of law it can be concluded that such hearsay is cumulative to other evidence fully proving the issue. State v. Degraffenreid, 477 S. W.2d 57, 1. c. 66 (Mo.Sup.) and 67. The absolute exclusion of such prior statements is modified by the rule that they may be received to "impeach" or "contradict" the witness. State v. Stamper, 314 Mo. 635, 285 S.W. 437 (1926).

■    This exception to the exclusion of such statements is based on the broad policy that the trier of fact is entitled to evaluate the credibility of the witness and to give to his testimony such weight as they may determine it is entitled. One of the very real factors affecting that deter-

mination is his lack of consistency in relating the facts on a prior occasion. Such prior statements, nonetheless, are not proof of the truth of the matter asserted and can afford no basis for the jury's ultimate fact finding. State v. Degraffenreid, supra. In the ordinary situation then, the opponent will object to the proponent's evidence of contradiction and request the instruction properly limiting it. The instruction thus given will have two effects—to delineate the proper use of the evidence and to instruct the jury to disregard it for any use in ultimate fact finding. This latter purpose of the instruction was early limited to that portion of the evidence which was truly contradictory of the trial testimony and early forms of the instruction were approved which limited the exclusionary aspect to the contradictory portion of the evidence offered and permitted consideration of any " * * * facts, * * * sworn to be true * * * in his testimony." State v. Carolla, supra, 292 S.W. 1. c. 726. This on the reasoning that although not admissible against the *proponent* of the evidence because of their hearsay nature, the proponent's right to such exclusion may be waived and the evidence offered in which event it is in the case for all purposes. State v. Paige, 446 S.W.2d 798 (Mo.Sup. 1969). State v. Thomas, 440 S.W.2d 467, 1. c. 470 (Mo.Sup.1969).

■    Thus the giving of the instruction depends on the twin requirements that the jury need be instructed on the proper use of the evidence as impeachment and warned that it may not be used as substantive evidence. Neither requirement exists under the facts of this case. The evidence did not impeach the witness and the defendant having offered it himself, waived any protection normally afforded by the rule. State v. Thomas, supra. State v. Paige, supra.

Nor will the holding of this case present any problem for the defendant seeking to offer truly impeaching testimony. If he does so and the state fails to object or request instruction, then the defendant will

have the advantage of full use of such testimony for all purposes. The issue when the state offers such evidence and no objection is made is not present in this case but was clearly ruled in State v. Houston, 263 S.W. 219, l. c. 224 (Mo.Sup.)

The judgment of conviction is affirmed.

All of the Judges concur.